376 So.2d 646 (1979)
Mrs. Joseph F. PARTYKA, Individually and as Executrix of the Estate of Eugene F. Hall, III, Deceased
v.
YAZOO DEVELOPMENT Corporation, 5A's Enterprises, Inc. and Tee Taylor.
No. 51254.
Supreme Court of Mississippi.
September 12, 1979.
Rehearing Denied November 28, 1979.
Paul D. Snow, III, Jackson, for appellant.
Riddick & Carpenter, Robert M. Carpenter, Jackson, for appellees.
En Banc.
COFER, Justice, for the Court:
Appellant, Mrs. Partyka, mother and executrix of the will of Eugene F. Hall, III, (Mr. Hall) brought suit for his death in the Circuit Court of Yazoo County. Appellees Yazoo Development Corporation (Yazoo), 5A's Enterprises, Incorporated, and Tee Taylor, incorporated in their answer to appellant's declaration, a special defense that, tersely stated, charged appellant had no standing to sue under Mississippi Code Annotated, *647 section 11-7-13 (1972), because deceased left surviving him his wife, Mrs. Hall, who was injured in the same accident and succumbed to the injuries approximately thirty minutes after her husband's death. On a hearing on the defense in advance of the hearing on the merits, the court sustained the special defense and appellant's suit was dismissed. This appeal resulted, appellant assigning two errors:
1. The lower court committed reversible error by sustaining defendants plea in bar because the deferred class of statutory beneficiaries under our wrongful death statute should be entitled to the cause of action and damages for the wrongful death of their blood relative when the only member of the preferred class of statutory beneficiaries is not living at the time suit is filed or recovery is made;
2. A last will and testament should circumvent our wrongful death statute.
The disastrous accident occurred April 21, 1978. Appellant filed suit for the death of her son, Eugene F. Hall, III, on May 4, 1978, the suit being for the benefit of all beneficiaries under section 11-7-13 (statute), and being brought in her individual name. On May 11, 1978, Mrs. Carrie Mae Dearman, mother of Mrs. Hall, having qualified as Mrs. Hall's administratrix, brought a suit for the wrongful death of Mrs. Hall and another suit for the death of Mr. Hall. On discovery of a will which Mr. Hall had made, wherein appellant was named executrix and sole primary beneficiary, which she caused to be probated, and received the court's authority to bring the suit, appellant, on June 20, 1978, amended her declaration to sue individually and as executrix. (The amended declaration asserted that the suit was "for herself and on behalf of the heirs at law and/or next of kin of decedent which include his mother, Mrs. Joseph F. Partyka; his father, Eugene F. Hall, II; his half-brother, Jon M. Freemen; his half-sister, Mrs. Janice Kay Beard; his twin sister, Mrs. Gail Verret; and his sister, Mrs. Julie Bennett.")
Mrs. Hall's administratrix did not participate in appellant's hearing on the special plea, but her attorney lent help to defendants in successfully advancing the plea matter.
The important issue herein involved is whether on Mrs. Hall's decease (there were no children born to the decedents) the benefits to which she was entitled on account of Mr. Hall's death became a part of her intestate estate, or whether the second group of beneficiaries named in the statute became, on her death, the parties entitled to maintain a suit and recover the damages for Mr. Hall's wrongful death.
We affirm the lower court.
At the outset, we observe that appellant seems to find support in Smith v. Garrett, 287 So.2d 258 (Miss. 1973). The crucial decision there was whether the recovery for Mrs. Smith's death went to her heirs (a group of first cousins), by descent and distribution, or whether "general distribution" under the statute would permit its being paid out according to the wrongful death victim's will. This Court held in favor of testamentary disposition, and is not authority here.
Appellant also misconstrues Southern Pine Electric Power Association v. Denson, 214 Miss. 397, 57 So.2d 859 (1952). While it was established in the proof that Mrs. Stringer survived her husband for a very short interval, both having been electrocuted in the same occurrence, the case did not turn on her survivorship, but rather the entire pleadings were cast upon the erroneous premise that their deaths were simultaneous. Survivorship vel non of Mrs. Stringer was not alleged in the pleadings.

The answer thereto did not set up the question of survivorship. It did not aver that the damages were nominal or that they were only for the pecuniary loss and loss of companionship to Mrs. Stringer, as the survivor, for a brief period of time. No affirmative defense whatever was interposed thereto. On the contrary, the answer merely said: "Defendant denies paragraph 8 of the declaration." If such issue had been raised, the burden would have fallen on appellant. Daniels v. Bush, 211 Miss. 1, 50 So.2d 563. (Emphasis supplied.)

*648 Lawsuits must have issues. Those issues must be made by the pleadings. Proof must conform to the issues made by such pleadings. Otherwise lawyers, trying a case, will be like mariners, without any form of compass, sailing an uncharted sea. (Emphasis supplied).
* * * * * *
It was admitted that the decedent had a life expectancy of thirty years and eight months. There was no proof either as to earning capacity or pain and suffering. Evidence by the plaintiff, without objection, showed that decedent had eight brothers and sisters and that the companionship between him and them was close and fine. Such evidence has considerable probative value if Mrs. Stringer was not the survivor, and if simultaneous deaths are assumed. As we have already said, the question of survivorship is not involved here. (Emphasis supplied). (214 Miss. at 415-416, 57 So.2d at 865).
To suggestion of error [now petition for rehearing] at 214 Miss. 417, 59 So.2d 75 (1952), this Court made the following response:
Even though the proof of the survivorship of the wife would have been competent for the purpose in connection with which it was introduced, that is to say as tending to reduce the amount of the actual damages. ... (Emphasis supplied). (214 Miss. at 420-421, 59 So.2d at 76).
The statute, as it is applied to this cause, provides that, if Mr. Hall left a widow or children or both, or father or mother or sister, or brother, then suit may be brought by one entitled to recover for all entitled to recover, or by the estate's (Hall's) representative for those entitled to recover, and recovery shall be for all interested parties.
The statute fixes and provides for distribution of the recovery, thus:
If the decedent was a married man (as here), the damages shall be equally distributed to his wife and children, and if he has no children (as here) all shall go to his wife.

If the deceased has no wife or children, the damages shall be distributed to the father, mother, brothers and sisters, or such of them as the deceased may have living at his or her death.
It seems to be undoubted that, if Mr. Hall left a wife and/or children, then such relative or relatives would be entitled to the damages to the exclusion of the deferred relatives  parents, brothers and sisters. Of these preferred relatives, relatives of the first echelon, only his wife survived him; he left only her. Therefore, she, and she alone, was entitled to any recovery for Mr. Hall's death. Mr. Hall left his wife, if ever, at his death. As will be later herein noticed, any interpretation of the statute to the effect that those surviving who sued, or were in being during the suit, or upon recovery, are those left by Mr. Hall would lead to endless confusion and injustice. Nor does the statute even imply that the beneficiary must survive for a prescribed minimum length of time in order to be classified as left.
Mr. Hall had a wife when he died, and left a wife, even though her survivorship was for only a matter of minutes. At his death before her decease she, at once, had a cause of action for his wrongful death. This cause of action was an item of property, an asset, in her estate, on which she could sue.
Section 91-7-233 authorized Mrs. Hall's administratrix to commence and prosecute any personal action whatever at law or in equity which the testator or intestate might have commenced and prosecuted.
In Scott v. Munn, 245 Miss. 120, 146 So.2d 564 (1962), Munn sued for damages suffered by his wife growing out of an automobile accident. Munn, the plaintiff died, and the suit was revived in the name of the administratrix of his estate, and was prosecuted to judgment. On appeal here, it was held that the part of the action for medical bills and services of the wife survived his death, but that the claim for companionship and consortium was extinguished by his death and was not a subject for revivor in the administratrix.
*649 Kentucky has a wrongful death statute very similar to ours. Its KRS 411.130(2) provides:
(2). The amount recovered ... shall be for the benefit of and go to the kindred of the deceased in the following order:
a. If the deceased leaves a widow or husband, and no children or their descendants, then the whole to the widow or husband... . (Emphasis supplied)
* * * * * *
d. If the deceased leaves no widow, husband or child, then the recovery shall pass to the mother and father of the deceased ... and if the father is dead and the mother living, the whole thereof shall go to the mother.
e. If the deceased leaves no widow, husband or child, and if both father and mother are dead, then the whole of the recovery shall become a part of the personal estate of the deceased, and after the payment of his debts the remainder, if any, shall pass to his kindred more remote than those above named, according to the law of descent and distribution.
Sharp's Admr. v. Sharp's Admr., 284 S.W.2d 673 (Ky. 1955), decided under the statute just above noticed, is in point here. The Sharps, husband and wife, were in an accident in which the wife was killed, leaving as her survivors her husband, who died twenty-six days later, and her mother, but no child. The husband was survived by children of a former marriage. Mrs. Sharp's administrator settled her death claim, and distribution of the proceeds of the settlement was made to Mr. Sharp's estate, and an appeal was taken to the Court of Appeals of Kentucky.
In affirming the award to the husband's estate, the appellate court cited Thomas' Admr. v. Maysville Gas Co., 112 Ky. 569, 66 S.W. 398 (1902), wherein the question of abatement of a cause of action brought by the father for the death of a son, on the father's death, was at issue, and quoted therefrom, "James Thomas being in esse when his son died, his right attached, and, having attached, descended at his death, with his other personal property;" and further, "The law regards that as done which ought to have been done; and, if it is finally held liable, those persons who would have gotten the fund if the claim had been paid off when the right attached are not affected by the fact that they did not survive the final result of the litigation." The appellate court also cited Ky. Utilities Co. v. McCarty's Admr., 169 Ky. 38, 183 S.W. 237 (1916), and of it said, "It was there held that the administrator of the person negligently killed acts as a representative of the surviving designated relative and that if the survivor subsequently dies, recovery goes to the latter's estate and descends as his other personal property."
The court said that Kentucky decisions had clearly recognized "that the person entitled to benefits under the statute was to be determined at the time of the death of the person wrongfully killed," (emphasis by that court); and further:
... The statute says specifically that if the deceased "leaves" a widow or husband (and no children or their descendants), then the amount recovered shall be for the benefit of the widow or husband. When could one spouse possibly leave a surviving widow or husband except at the time of death? (Emphasis by that court). To say that the married woman in this case did not leave her husband until the time of the recovery (in this case a settlement made four months after her death) would certainly be a most unusual construction of the word "leave." (284 S.W.2d at 675).
Noting that the underlying objective (as is argued here) is to benefit those relatives who undergo a pecuniary loss, and that, in that case, persons not designated by the statute will ultimately be benefited, and that the statute so recognizes the fact, that court continued:
In addition, we cannot say that a designated beneficiary who dies before the recovery has not been benefited by it, even if, as suggested, the recovery is paid to his creditors. (284 S.W.2d at 675).
*650 Reverting now to the argument of appellant that the mother, father, and siblings of Mr. Hall had, on Mrs. Hall's death, conferred upon them a right to the suit and the recovery, if any, we think that the Kentucky Court summarized well the reason and logic of holding that Mrs. Hall's right in the benefits of the wrongful death went to her estate, rather than the arising by her death of a cause of action by the deferred beneficiaries. We quote further therefrom with approval:

There are endless practical difficulties and uncertainties which would arise if we decided that the beneficiary under the statute could not be ascertained until the time of "recovery." In the first place, would the time of recovery be the date of a judgment, or an agreed settlement, or the time the damages were actually paid? Secondly, we would be forced to create some strange type of floating cause of action vested in the deceased's administrator with an unknown and unascertainable beneficiary. Yet we have recognized that the administrator acts as the representative of some specific beneficiary designated by the statute. Kentucky Utilities Co. v. McCarty's Adm'r, 169 Ky. 38, 183 S.W. 237, above cited. Thirdly, the administrator, by his control of the claim, would be in a position to determine arbitrarily in many instances who would be the beneficiary. Fourthly, since the administrator would represent no one in particular prior to the date of the recovery, to whom would he be responsible for enforcement of the claim, if anyone? Other almost insurmountable problems are readily apparent.
We have pointed out the above difficulties simply to indicate the vast uncertainty with which the statute would be fraught if the easily ascertainable time of the wrongful death is not determinative of the beneficiary for whom recovery may be sought. Assuming for the sake of argument that this statute is susceptible of different constructions, clearly that one should be adopted which will avoid uncertainty and confusion. 50 Am.Jur., Statutes, Section 382. On what we consider sound reason and authority, the trial court correctly adjudicated the issue presented. (Emphasis supplied). (284 S.W.2d at 675).
In White v. Atchison T. & S.F. Ry. Co., 125 Kan. 537, 265 P. 73 (1928), it was concluded that where, in a case such as this, one survives another, but for a moment, an action accrues to the survivor, the determining fact being whether the survivor did survive the decedent and not how long he lived.
We, accordingly, find the first assignment of error to be without merit.
We notice the second assignment that a last will and testament should circumvent the wrongful death statute. If we have correct understanding of this contention, it is that all recoverable under the statute should go to the beneficiary in Mr. Hall's will. If we are correct, we find a complete departure from appellant's argument in her first assignment in which she asserts that "the second most important aspect of our wrongful death statute is to specify exactly who is to recover damages for the wrongful death. The statute is clear that the damages are for the exclusive benefit of certain designated members of the family of the deceased ..." A similar position is maintained throughout the argument.
A person may not devise or bequeath, so as to be effectual at his decease, that which he does not have. The wrongful death statute creates a new and independent cause of action in favor of those named in the statute. Hasson Grocery Co. v. Cook, 196 Miss. 452, 459, 17 So.2d 791 (1944). The cause of action thereby created is not a part of the estate of the deceased (intestate). Byars v. Austin Admrs., 218 So.2d 11, 15 (Miss. 1969). If none of the heirs named in the statute survived the wrongful death victim, then the recovery under the statute would become an asset of the estate to be used as any other asset thereof. Smith v. Garrett, 287 So.2d 258, 261 (Miss. 1973).
Finding no merit in either assignment of error, it follows that the lower courts' decision must be affirmed.
AFFIRMED.
*651 SMITH and ROBERTSON, P. JJ., and SUGG, BROOM and LEE, JJ., concur.
PATTERSON, C.J., and WALKER and BOWLING, JJ., dissent.
LEE, Justice, concurring:
I agree with the majority opinion. The wrongful death statute is a creature of the legislature and is unknown to the common law. Its terms are clear and unmistakable and should be so construed. The basic statute has been law for more than one hundred (100) years without change as to the beneficiaries of the wrongful death claim, except to extend it to adopted children and adoptive parents. I think the legislature intentionally has declined to amend the statute, abating the claim of a primary beneficiary (as here) upon her death in favor of secondary beneficiaries. Without question, confusion, uncertainty and injustice would result from such a change. Two examples follow.
(1) The husband and wife are involved in an accident. The husband expires instantly but the wife survives, critically injured and in a coma. Her physician advises relatives that she will live not more than thirty (30) or sixty (60) days. In order to obtain the benefit of the statute for her, the relatives obtain the appointment of a conservator (guardian), acquire chancery court authority and settle the claim. Miraculously, the widow recovers and is unable to sue on her claim.
(2) The husband loses his life in an automobile accident in which the wife was not involved. She declines to press her claim because the defendant is her relative, her friend, or, for some other reason. She lives five and one-half (5 1/2) years and dies before the Statute of Limitations runs. Under the appellant's theory, the secondary beneficiaries could sue the person or persons whom the widow declined to sue.
The statute is plain and unambiguous. In my judgment, it makes no difference whether the widow lived thirty (30) minutes or five (5) years three hundred sixty-four (364) days. The claim was still hers. This question was not before the Court in Southern Pine Electric Power Ass'n v. Denson, 214 Miss. 397, 57 So.2d 859 (1952), but the clear language of Mr. Justice Percy M. Lee indicates that, had it been, the decision of the Denson Court would be the same as the majority opinion here.
SMITH, P.J., and SUGG, BROOM and COFER, JJ., concur.
BOWLING, Justice, dissenting:
With deference, I do not believe that the majority opinion reaches the right result. The case involves the interpretation of a special statute passed in derogation of the common law [§ 11-7-13, et seq.] commonly known as the "wrongful death statute." The statute is inclusive in itself and sets out the newly created cause of action and the manner in which it should be enforced.
An exhaustive research of the question presented as set out in the majority opinion reveals many differing holdings and interpretations of many statutes. We find no two statutes to be alike. As stated in 22 Am.Jur.2d, Death section 70, p. 653,
The cases are conflicting on the question of the survivability of a cause of action, created under statutes similar to Lord Campbell's Act, on the death of the beneficiary or beneficiaries therein named. In some states the cause of action has been held not to survive. The view that a cause of action does not survive the beneficiary's death has sometimes been based on the theory that at such death, there is no one for whose benefit it may be continued, the representatives of the deceased beneficiaries not being persons for whose benefit the statutes authorize the action to be maintained.
We, therefore, first need to examine our statute. It is rather lengthy, but in my humble opinion the legislative intent is clear. The legislature, in its wisdom, selected certain beneficiaries by name and by class to recover damages sustained by them as a result of the wrongful death. The first class consisted of widows and children equally. This certainly is understandable. The second class consisted equally of husbands, *652 fathers, mothers, sisters or brothers [then living]. The statute then proceeds to set out who should bring the suit and in what manner, and ends by saying,
... there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned. . . [Emphasis supplied].
The "parties concerned" are those listed in the statute. No others were named or contemplated.
The statute further in establishing a second class of beneficiaries, towit: father, mother, brothers and sisters, designated only brothers and sisters "or such of them as the deceased may have living at his or her death."
The above language clearly indicates a definite direction from the legislature that children of deceased brothers and sisters, which, of course, would be nephews and nieces, could under no circumstances be a beneficiary of the wrongful death. Certainly there was no legislative intent for a result that would occur under the majority opinion's holding; that is, that remote next of kin of the deceased wife, some of whom probably were never known by the deceased, could recover for his death. It is unbelievable to me that the legislature intended to pass a law that would so provide in preference to the father, mother, brothers and sisters of a deceased.
The majority opinion lightly passes over the fairly recent case from this Court of Smith v. Garrett, 287 So.2d 258 (Miss. 1973). With deference, I believe that the opinion in that case, although admittedly not the identical set of facts, establishes jurisprudence commensurate with my contentions here. In Smith, the wrongful death deceased was a widow and left no children, father, mother, brother or sister. A money settlement was made by the wrongful tortfeasor with the estate of the deceased. The function of the court in its opinion was to determine the recipient of those funds. The chancellor held that the net proceeds, after expenses, should be paid to the first cousins of the decedent rather than the sole beneficiary under the decedent's will. This Court, in reversing the lower court, stated:
If the deceased have neither husband, nor wife, nor children, nor father, nor mother, nor sister, nor brother, then the damages shall go to the legal representative, subject to debts and general distribution.
The Court then quoted the parts of the wrongful death statute hereinbefore quoted in this opinion, and said:
A first cousin is not named or listed as a relative of the deceased who could bring an action for his or her wrongful death. Neither is a first cousin named or listed anywhere in the statute as a dependent or beneficiary of the deceased. Yet the wrongful death statute created a cause of action unknown to the common law and must be strictly construed. Logan v. Durham, 231 Miss. 232, 95 So.2d 227 (1957). In construing this statute, we are bound to consider the fact that the Legislature studiously avoided any mention of a first cousin as a dependent, beneficiary, or representative of the deceased who could bring an action for wrongful death. In the case at bar, only Pauline Smith, as executrix, could bring this action as the personal representative of the deceased.
.....
The Legislature was very careful to provide that if there were surviving heirs among those specifically named and listed that:
"Damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased, except as hereinafter provided, ..."
The Legislature was just as careful to make an exception when there were no surviving heirs among those specifically listed. In that event, the damages recovered would become just another asset of the estate and be subject to debts and then distribution in accordance with the intent of the testatrix as solemnly expressed in her last will and testament. It would have been a simple matter for the Legislature to have provided otherwise if this were not its intent. Alabama, in its wrongful death statute, provided:

*653 "[A]nd the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. (Code of Alabama, Title 7, § 123)."
Under the ruling of the learned circuit judge in the present case, the heirs of the deceased wife, no matter what degree, would be the sole beneficiaries under the wrongful death statute because of Hall's death. This to the exclusion of the specifically named statutory beneficiaries, the mother, father, brothers and sisters. It would have been an easy matter for the legislature to have provided for the benefits to accrue to persons not named in the event of the death of a named beneficiary prior to suit being brought by that beneficiary. The statute is clear that the damages are for the exclusive benefit of certain designated members of the family of a deceased and not the heirs of a deceased beneficiary.
In Thornton v. Insurance Company of North America, 287 So.2d 262 (Miss. 1973), this Court said:
The damages recoverable under such a suit filed under Miss. Code Ann. § 11-7-13 (1972) are twofold; first, all damages of every kind to the decedent, and, second, all damages of every kind to the parties interested in the suit. [Emphasis supplied].
It was held by this Court in Scott v. K-B Photo Service, Inc., 260 So.2d 842 (Miss. 1972), that the damages that might be recovered by the parties interested in the suit for damages are those
that his heirs might have suffered because of their personal relationship with the deceased, such as support and loss of companionship.
As stated by the United States Court of Appeals for the Fifth Circuit, in Thames v. State, 117 F.2d 949 (Miss. 1941):
[The Mississippi wrongful death statute] gives a right of action for the death in case the party injured could have sued. It does not cause to survive or to be revived the deceased's right of action, but enables designated members of his family to recover damages. ... [Emphasis supplied].
I respectfully urge that the principle that should be applied to the wrongful death statute of this state as intended by its language through the Legislature is set out in 25A C.J.S. Death § 40 page 696 (1966), as follows:
In the absence of statutory provision to the contrary, an action or right of action for death abates on death of the beneficiary. Thus, under many statutes creating or permitting a right of action for death, it is held that the action or right of action abates on the death of the beneficiary entitled under the statute, regardless of whether the right of action is given to the beneficiary in his own right, or to a personal representative or other use-plaintiff for his benefit, and cannot be revived or prosecuted for the benefit of his heirs or next of kin.
In such cases, where one or more of several beneficiaries in the same class die, the right of action abates as to them, but survives for the exclusive benefit of the remaining beneficiaries of the class.
In summary, an interpretation of the wrongful death statute which gives sole recovery to remote in-laws, rather than the father, mother, brother and sister cannot be reconciled with justice and right. The legislative intent when possible (and as to me is clear here) should be decided on those two principles.
PATTERSON, C.J., and WALKER, J., join in this dissent.